**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CARLOS BODOY,

      Petitioner,

vs.                                        Case No. 3:10-cv-1156-J-32JBT

SEC'Y, FLA. DEP'T OF CORR. et al.,

      Respondents.

_____

## ORDER

### I. Status

      Petitioner, an inmate of the Florida penal system, is proceeding in this case on a pro se Amended Petition (Doc. #23) for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his June 5, 2007 state court (Duval County) conviction for conspiracy to traffic in cocaine, for which he received a thirty-year sentence with a fifteen- year minimum mandatory term.  The Amended Petition raises nine grounds for relief.  Respondents have responded.  See Response to Amended Petition for Habeas Corpus (Doc. #28) (Response).[1] Petitioner has replied.  See Petitioner's Request for Leave to Reply/Traverse to Response (Doc. #31) (Reply).  Thus, this case is ripe for review.[2]

_____

[1] The Court hereinafter refers to each exhibit submitted in support of the Response as "Ex."

[2] Respondents set forth the procedural history and assert that this action was timely filed. See Response at 1-4.  Thus, the Court will not repeat the procedural history.

## II.  Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## III.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits,[3] a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[3] In Harrington v. Richter, 131 S.Ct. 770, 785 (2011), the United States Supreme Court held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  The Court explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-85.

States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[4] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, ––– U.S. –––, –––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

## IV. Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel claims. To prevail on these

claims, Petitioner "must meet both the deficient performance and prejudice prongs of

---

[4] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

3

Strickland."  Wong v. Belmontes, 558 U.S. 15, 16 (2009) (per curiam) (citing Strickland v.

Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  Id., at 689, 104 S.Ct. 2052.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., at 694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Id., at 693, 104 S.Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id., at 687, 104 S.Ct. 2052.

Harrington v. Richter, 131 S.Ct. 770, 787-88 (2011).  Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not

address the performance prong if the petitioner cannot meet the prejudice prong, and vice-

versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold."  Schriro, supra, at 473, 127 S.Ct. 1933.  And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably

4

> determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).   Thus, the standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, "and when the two apply in tandem, review is 'doubly' so[.]"  <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Knowles</u>, 556 U.S. at 123).

### V. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner contends that his trial counsel was ineffective for failing to file a motion to dismiss the information charging Petitioner with conspiracy to traffic in cocaine on the basis that the Office of Statewide Prosecution (OSP) lacked jurisdiction to bring charges against Petitioner.  Amended Petition at 5-8.  Petitioner raised this ineffectiveness claim in state court in a motion for post-conviction relief filed pursuant to Fla. R. Crim. P. 3.850 (3.850 motion).   After identifying <u>Strickland</u> as the controlling legal authority, the circuit court adjudicated this claim as follows:

> In his first ground, the Defendant alleges counsel was ineffective by failing to file a motion to dismiss the Information based upon the Office of Statewide Prosecution's ("OSP") lack of jurisdiction.  Pursuant to the Florida Constitution, the O[SP] has "concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law." Art. IV, § 4(b), Fla. Const. Further, section 16.56(1)(a), Florida Statutes (2006) provides that the O[SP] may only prosecute certain enumerated offenses, and only when "such offense is occurring, or has occurred, in

5

two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits."

In the instant case, the Defendant was charged by the O[SP] in the Information with Conspiracy to Traffic in Cocaine, 400 Grams or More (Count 1), and Trafficking in Cocaine, 400 Grams or More (Count 3).  (Exhibit "C.")[5]  The Information alleges that both offenses took place in Duval County, Florida, but it also concludes with the following jurisdictional statement:

> AND SAID OFFENSES OCCURRED IN TWO OR MORE JUDICIAL CIRCUITS IN THE STATE OF FLORIDA AS PART OF A RELATED TRANSACTION OR SAID OFFENSES WERE CONNECTED WITH AN ORGANIZED CRIMINAL CONSPIRACY AFFECTING TWO OR MORE JUDICIAL CIRCUITS IN THE STATE OF FLORIDA.

(Exhibit "C.")

As a general rule, the jurisdiction of the O[SP] will be determined from the face of the Information.  Winter v. State, 781 So.2d 1111, 1116 (Fla. 1st DCA 2001) (citing Zanger v. State, 548 So.2d 746, 748 (Fla. 4th DCA 1989)).  However, "[t]he OSP need not allege in particular counts that the crimes occurred in or affected two or more judicial circuits." Winter, 781 So. 2d at 1116.  In Winter, the court went on to hold that a general allegation similar to the one in the instant case was sufficient to show jurisdiction on the face of the information.  Id. However, on rehearing the court clarified that a defendant may still challenge the jurisdiction through a motion to dismiss.  Id. at 1117.  "If the motion to dismiss raises factual matters, the court shall make a determination of those factual matters before allowing the case to proceed further." Id.  Thus, if counsel in the instant case had raised the jurisdictional issue in a motion to dismiss, the trial court would have been required to determine from the evidence whether jurisdiction was proper.

---

[5] See Ex. A at 69-71.

The Defendant alleges that his offenses occurred only in Duval County and therefore, the O[SP] did not have jurisdiction to prosecute him and a motion to dismiss would have been granted. This Court disagrees. The evidence at trial established that the Defendant engaged in conversations regarding trafficking in cocaine in Nassau County, Florida, as well as Duval County. Specifically, Rafael Torres, the confidential informant, testified that he worked with the Defendant in Fernandina Beach, Florida, which is in Nassau County, and that during this time the Defendant discussed selling drugs to him. (Exhibit "D," pages 476-482.)[6] Mr. Torres also testified that the Defendant was trying to obtain cocaine from California, and that at one point the Defendant drove from Duval County, Florida, to New York to meet a contact who would possibly purchase the drugs. (Exhibit "D," pages 483-486.) The Defendant testified at trial and admitted making the trip to New York and also later admitted that he was trying to do a drug deal. (Exhibit "D," pages 806, 813.) In addition, once the drug deal was set up, the evidence established that the drugs were driven from Bradenton, Manatee County, Florida to Duval County. One of the Defendant's co-defendants, Jonathan Morales, testified that on April 23, 2006, he drove from Jacksonville to Bradenton, picked up fifteen kilos of cocaine, and then drove the drugs back to Jacksonville. (Exhibit "D," pages 579-581.) Before they could arrange a safe time and place to deliver the drugs to the Defendant or other co-defendants, Mr. Morales was stopped by . . . the police, the drugs were discovered, and he was arrested. (Exhibit "D," pages 582-586, 591-598, 607-612.)

The above evidence establishes that the conspiracy and trafficking crimes occurred in and impacted more than one circuit in Florida. The Defendant engaged in conversations regarding selling drugs in Nassau and Duval Counties. He also drove from Duval County to New York, which requires him to pass through at least one other County, in order to meet a drug contact. Further, the drugs were driven from Bradenton, Manatee County, Florida, through numerous other Counties, to Jacksonville. Therefore, the O[SP] had jurisdiction to prosecute

---

[6] The circuit court's citations to the trial transcript correspond to the page numbers in the upper right corner of each page of Respondents' Ex. D through Ex. G (this Court's copy of the trial transcript).

the Defendant.  <u>See</u> <u>King v. State</u>, 790 So.2d 477, 479-480 (Fla. 5th DCA 2001), <u>rev. dismissed</u>, 820 So.2d 941 (Fla. 2002), <u>cert. denied</u>, 537 U.S. 961,123 S.Ct. 394,154 L.Ed.2d 314 (2002) (holding that courts should broadly construe the prosecutorial authority of the O[SP] and finding that the O[SP] had jurisdiction where a motorcycle "chop shop" was operated in Orange County but depended in part on stolen motorcycles from Volusia County); <u>Cortes v. Gladish</u>, 2008 WL 728382 (M.D. Fla. 2008) (denying a claim of ineffective assistance of counsel for failure to challenge the jurisdiction of the O[SP] where codefendants traveled between Volusia and Orange Counties while forming the intent to sell heroin).

Because he cannot show that a motion to dismiss would have been granted by the trial court, the Defendant has failed to establish prejudice.  <u>Strickland</u>, 466 U.S. at 687. Finally, this Court also notes that even if the trial court had found that the O[SP] lacked jurisdiction and dismissed the Information, the State Attorney would still have had the option to prosecute the Defendant on the same charges. <u>See</u> <u>Zanger v. State</u>, 548 So.2d 746, 748-49 (Fla. 4th DCA 1989).  Accordingly, the Defendant's first ground is denied.

Ex. N at 155-58 (footnote omitted).  Upon Petitioner's appeal, the First District Court of

Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate

courts.  Next, this Court must consider the "contrary to" and "unreasonable application"

components of the statute.  "It is the objective reasonableness, not the correctness <u>per se</u>,

of the state court decision that we are to decide." <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th

Cir. 2001).  Upon thorough review of the record and the applicable law, this Court concludes

that the state courts' adjudications of this claim were not contrary to clearly established

federal law, did not involve an unreasonable application of clearly established federal law,

and were not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## B.  Ground Two

Petitioner asserts that the trial court violated his rights under the Fifth Amendment to the United States Constitution by entering judgment where the jurisdiction of the court was not properly invoked by the OSP and where the information failed to allege jurisdiction. Amended Petition at 10-12.  Petitioner raised this claim in state court in his 3.850 motion, and the circuit court adjudicated this claim as follows:

> In his second ground, the Defendant argues that his conviction is void based on the lack of jurisdiction of the O[SP] to prosecute him.  For the reasons detailed in ground one above, this claim is denied.

Ex. N at 158.  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## C.  Ground Three

Petitioner alleges that trial counsel was ineffective for failing to object to the trial court's jury instruction on a criminal offense which was not charged in the Information.

9

Amended Petition at 14-18.  Petitioner raised this ineffectiveness claim in state court in his

3.850 motion,[7] and the circuit court adjudicated the claim as follows:

> In his third ground, the Defendant argues that counsel was ineffective by failing to object to the jury instruction on Count One, Conspiracy to Traffic in Cocaine.  In Count One of the Information, the State charged the Defendant with Conspiracy to Traffic in Cocaine, but did not therein define the elements of Trafficking in Cocaine.  (Exhibit "C.")[8]  When it instructed the jury on Count One, the trial court included the specific elements of Trafficking in Cocaine. (Exhibits "D," pages 921-922; "E.")[9]  The Defendant argues that this was erroneous because by including elements in the jury instruction which were not included in the Information, the trial court improperly instructed the jury on a crime for which the Defendant was not charged.
>
> The Defendant's claim is without merit. The Information in the instant case properly set forth the charge of Conspiracy to Traffic in Cocaine in Count One.  (Exhibit "C.")  An information charging conspiracy "'should state the object or purpose of the conspiracy, but it is unnecessary to set forth the elements of the contemplated offense with the particularity and technical precision required in drawing an indictment or information charging the commission of such offense.'"  State v. Adkins, 553 So.2d 294, 297 (Fla. 1st DCA 1989) (quoting State v. Smith, 240 So.2d 807, 809 (Fla. 1970)).  Further, the trial court properly instructed the jury by giving the standard jury instructions for Conspiracy and Trafficking in Cocaine.  Fla. Std. Crim. Jury Instr. 5.3 and 25.10 (2006); (Exhibits "D," pages 921-922; "E.")  The fact that the trial court included in the Conspiracy instruction the definition of the crime of Trafficking in Cocaine does not in any way amend the Conspiracy charge in the Information nor

---

[7] Respondents assert, and this Court agrees, that to the extent Petitioner raises additional argument in support of this claim that was not raised in his 3.850 motion, the claim is unexhausted and procedurally barred.  See Response at 9-11.

[8] See Ex. A at 70.

[9] See Ex. G at 921-22; Ex. O at 269.

does it instruct the jury on a crime not charged.  Rather, it provides the definition of the crime of Trafficking, which was the subject of the conspiracy, in accordance with the standard jury instruction for Trafficking.  In fact, the standard jury instruction for Conspiracy includes a note that in some cases it may be necessary to include the definition of the crime which is the subject of the conspiracy.  Fla. Std. Crim. Jury Instr. 5.3 (2006). Therefore, it cannot be held to be error to do so.

The Florida Supreme Court has held that "'trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient.'"  Rodriguez v. State, 919 So.2d 1252, 1272 (Fla. 2005) (quoting Thompson v. State, 759 So.2d 650, 665 (Fla. 2000)).  Accordingly, ground three is denied.

Ex. N at 158-59.  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## D.  Ground Four

Petitioner alleges that trial counsel was ineffective for failing to request jury instructions on lesser included offenses, including information about the minimum mandatory penalties.  Amended Petition at 20-22.  Petitioner raised this ineffectiveness claim in state court in his 3.850 motion, and the circuit court adjudicated this claim as follows:

11

In ground four, the Defendant alleges counsel was ineffective by failing to request that the trial court instruct the jurors on two lesser-included offenses for Count One, Conspiracy to Traffic in Cocaine, 400 Grams or More.  The Defendant argues that counsel should have requested the lesser-included instructions of (1) Conspiracy to Traffic in Cocaine, Less than 400 Grams but More than 200 Grams and (2) Conspiracy to Traffic in Cocaine, Less than 200 Grams but More than 28 Grams.  Both are lesser-included offenses to the charge of Conspiracy to Traffic in Cocaine, 400 Grams or More, and should be given if requested.  State v. Weller, 590 So.2d 923, 927 (Fla. 1991).  The Defendant also argues that counsel should have requested that the trial court advise the jurors of the penalties for each lesser-included offense.  This is not required.  Limose v. State, 656 So.2d 947, 949-50 (Fla. 5th DCA 1995) (holding that Weller only requires the lessers be given, but not that the jury be instructed on the specific penalties).  Therefore, although counsel could have requested the two lesser-included offense instructions, counsel was not ineffective in failing to request an instruction on the penalties.

Although the Defendant has established that he was entitled to instructions on the two lesser included offenses, he is not entitled to post conviction relief because he cannot establish prejudice.  "[U]nder Strickland, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented.[10]" Sanders v. State, 946 So.2d 953, 956 (Fla. 2006).  "Therefore, a claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser-

---

[10] The uncontroverted evidence established that the amount of cocaine in question was over 400 grams.  Rafael Torres testified that the Petitioner agreed to sell him thirty kilograms of cocaine.  See Ex. E at 508-12.  Jonathon Morales testified that he transported approximately fifteen kilograms of cocaine from Bradenton to Jacksonville, which he was supposed to deliver to the Petitioner and his wife; however Morales was arrested and the cocaine was seized before the transaction was completed.  Id. at 568-60; Ex. F at 607-12.  The seized cocaine weighed 16.02 kilograms.  Ex. F at 711.  Special Agent Mark Baughman, an agent employed by the Drug Enforcement Administration, testified that Petitioner confessed to brokering a sale of half of a kilogram of cocaine and attempting to broker a deal involving twenty-five kilograms of cocaine.  Id. at 700-03.

12

> included offense may be summarily denied." Id. at 960.
> Accordingly, the Defendant's fourth ground is denied.

Ex. N at 159-60.  Upon Petitioner's appeal, the First District Court of Appeal summarily

affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate

courts.  Upon thorough review of the record and the applicable law, this Court concludes that

the state courts' adjudications of this claim were not contrary to clearly established federal

law, did not involve an unreasonable application of clearly established federal law, and were

not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## E.  Ground Five

Petitioner contends trial counsel was ineffective for failing to inform the State that

Petitioner had accepted its plea offer.  Amended Petition at 23-24.  Petitioner raised this

ineffectiveness claim in state court in his 3.850 motion, and the circuit court adjudicated this

claim[11] as follows:

> In his fifth ground, the Defendant alleges counsel was
> ineffective by failing to advise the State that the Defendant had
> accepted its plea offer.  On March 14, 2007, the State sent
> counsel a written plea offer of ten years of incarceration.
> (Exhibit "F.")[12]  The written offer indicates that it expires on
> March 21, 2007 at 3 :00 p.m.  The Defendant alleges that during

---

[11] Petitioner concedes that the state post-conviction court reached the correct conclusion
when it summarily denied this claim; however, he asks this Court to conduct a de novo
review of the claim.  This Court declines to conduct a de novo review because the state
courts' adjudications of this claim are entitled to AEDPA deference.

[12] See Ex. N at 129.

visits with counsel at the jail in the latter part of March of 2007, he advised counsel that he would accept this plea offer.  The Defendant's claim is refuted by the record.  During a hearing on April 11, 2007, after the March 14 offer had expired, the prosecutor for the O[SP], Jason Lewis, put on the record that it had made a second offer of nine years to the Defendant, which he turned down:

> MR. LEWIS:  Good morning, Judge.  We are set this morning, I think there's [sic] a few issues. . . . Just for the record, the State did offer the defendant nine years in prison today, which he's turned that down, and there is [sic] no more offers available at this point.

(Exhibit "G," page 3.)[13]  The trial court then proceeded to set the case for trial.  The transcript reflects that the Defendant was present for this hearing, as the trial court addressed the Defendant personally when setting the pretrial and trial dates. (Exhibit "G," page 4.)[14]  At no point during this hearing did the Defendant or counsel advise the State or the trial court that the Defendant had already accepted or wished to accept the ten year plea offer or any plea offer.

Jury selection in the Defendant's case took place on April 30, 2007.  (Exhibit "H," page 1.)  Prior to selecting the jury, counsel advised the trial court that the Defendant wished to address the court directly:

> MR. ROWE:  Your Honor, my client wishes to address the Court directly.  I spoke with the Court earlier.  I don't know if I let Mr. Lewis know, but he'd like to address the Court.
>
> THE COURT:  All right.
>
> (The defendant was asked if he did swear or affirm to tell the truth.)

---

[13] See Ex. N at 147.

[14] See Ex. N at 148.

14

THE DEFENDANT:  Yes.

THE COURT:  Mr. Bodoy, your attorney had told me earlier, when everyone was not present, that you wished to speak with the Court, and I asked that we wait until, as I'm required, everyone was present, the court reporter, the interpreter, and the State.  So now you may address the Court.

THE DEFENDANT:  Okay.
(Through interpreter:)  What I want to say, that I'm not pleased with the representation of my lawyer, because I have been 11 months in the county.  I don't have any copy of discovery. This is my first day that I look at the deposition in all that time.  So I don't think I'd be ready for a good defense.

THE COURT:  . . .  These are matters you should have discussed with your attorney sometime between the time the case was set for trial and today.  Are you retained or appointed?

MR. ROWE:  I was retained, Your Honor.

THE COURT:  And you retained Mr. Rowe, had the right to stop that representation at some point if you were not satisfied and move on with a new attorney, but you continued to allow him to represent you.
And he has appeared at every court date, told the Court what's happening.  I kept track of the fact that the case was moving along, the depositions were being taken.  I granted your motion for costs so that copies could be provided to you at no cost to you of every thing so Mr. Rowe could prepare for trial today.  So I'm not sure what the problem is.

THE DEFENDANT:  Okay.
(Through interpreter:)  I haven't told my lawyer that I would like to have those, but he has denied me that opportunity.  The last time I asked to address the Court and he advised me to not to do that.  I

15

haven't read since May 26 -- there has been a lot of paper going on with my case, and I haven't seen any.
*It's not my intention to change the trial date.* That's your decision, and I respect your decision.

THE COURT:  All right.  Is there anything else?

THE DEFENDANT:  (Through interpreter:)  The last document that was presented wasn't discovery but a supplement of the last paperwork, of the regular paperwork.  I don't know if I have a right to receive copies of any of the paperwork that are involved in my case.
                    . . . .

THE DEFENDANT:  (Through interpreter:)  Yeah. *I haven't anything else to say, just to thank you for allowing me to speak.*

(Exhibit "H," pages 6, 9-11, 13-14, 16.)[15] (emphasis added.)  Thereafter, the trial court asked if both sides were ready to proceed, both sides indicated that they were ready, and jury selection commenced.  (Exhibit "H," page 20.)[16] At no time during this exchange did the Defendant ever advise the trial court that he desired to accept the State's plea offer or that he did not want to go to trial.

Finally, on May 21, 2007, after the trial but while awaiting sentencing, the Defendant wrote the trial court a letter which was made a part of the court file.  In the letter, the Defendant states: "I'd been sitting in the county jail for a year all-ready.  I haven't been involved in no problems, and another thing that I like to mention is that before we went to trial my case, I was always willing to negotiate a plea with my attorney (sic), but the state did offer a plea, which I didn't take it because I feel that the

---

[15] See Ex. C at 6-7, 9-11, 13-14, 16.

[16] See Ex. C at 20.

16

> plea wasn't according with my guidelines or my points."  (Exhibit "I.")[17]
>
> Based on all of the above, the record reflects, and the Defendant admits, that he never accepted the State's plea offer. Accordingly, the Defendant's claim in ground five is denied.

Ex. N at 160-63.  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## F.  Ground Six

Petitioner alleges that trial counsel was ineffective for failing to object to the use of the conjunction "and/or" in the conspiracy jury instruction.  Amended Petition at 25-27.  Petitioner raised this ineffectiveness claim in state court in his 3.850 motion, and the circuit court adjudicated this claim as follows:

> In his sixth ground, the Defendant alleges counsel was ineffective by failing to object to the Conspiracy jury instruction, which he alleges improperly contained an "and/or" conjunction. As to the Conspiracy charge, the trial court instructed the jury, in relevant part:

---

[17] See Ex. N at 151.

17

Count 1, conspiracy to traffic in cocaine, 400 grams or more: To prove the crime of criminal conspiracy, the State must prove the following two elements beyond a reasonable doubt: (1) The intent of Carlos Alberto Bodoy was that the offense of trafficking in cocaine, 400 grams or more, would be committed . . . . (2) In order to carry out that intent, Carlos Alberto Bodoy agreed, conspired, combined, or confederated with Adiswanda Paperol Figueroa, Ivan Salvador Gonzalez, Jose de Jesus Lugo-Lucio, Venancio Alvarado, **and/or** Jonathan Aguilar Morales to cause trafficking in cocaine to be committed either by them or one of them or by some person.

(Exhibits "D," pages 921-922; "E.")[18] (emphasis added.) Relying on the Florida Supreme Court's decisions in Hunter v. State, 8 So.3d 1052 (Fla. 2008) and Garzon v. State, 980 So.2d 1038 (Fla. 2008), the Defendant argues that the use of "and/or" between the co-defendants' names in the second element was improper. However, those cases are distinguishable from the instant case. In both Hunter and Garzon the defendants were tried together with two co-defendants before the same jury. Hunter, 8 So.3d at 1057; Garzon, 980 So.2d at 1039. In Hunter, "[f]or each of the instructions defining a criminal offense, where an element provided for the inclusion of the name of the defendant, the trial court instructed as 'TROY VICTORINO and/or JEROME HUNTER and/or MICHAEL SALAS.'" Hunter, 3 So.3d at 1070. Similarly, in Garzon, the instructions used "and/or" between the co-defendants' names for each count. Garzon, 980 So.2d at 1040. "For example, in instructing the jury on the elements of armed burglary, the trial court stated: To prove the crime of armed burglary of a dwelling, as charged in Count Two of the information, the state must prove the following three elements beyond a reasonable doubt. Number one, Zamir Garzon *and/or* [Charly] Coles *and/or* Ray Balthazar entered or remained in a structure owned by or in the possession of Sandra Smith." Id. In Garzon, the defendant argued this was error because it allowed the jury to convict one defendant based solely on a finding that one of the co-defendants had committed

---

[18] See Ex. G at 921-22; Ex. O at 269.

the elements of the offense. Id. at 1041. The Florida Supreme Court agreed that this was error. Id. at 1045. See also Hunter, 8 So.3d at 1070 (applying the holding in Garzon).

In the instant case, the Defendant was not tried with any of his co-defendants. (Exhibit "D, page 240.) Further, the Defendant's name was not linked by "and/or" to his co-defendant's name in the Conspiracy instruction. Instead, the jury was only instructed that to find the Defendant guilty of Conspiracy, they must find that he "agreed, conspired, combined, or confederated with Adiswanda Paperol Figueroa, Ivan Salvador Gonzalez, Jose de Jesus Lugo-Lucio, Venancio Alvarado, **and/or** Jonathan Aguilar Morales. . . ." (Exhibits "D," page 921; "E.")[19] Thus, the jury was properly instructed that they had to find that the Defendant conspired with at least one of the co-defendants. A similar instruction was upheld in Casimir v. McDonough, 932 So.2d 471 (Fla. 3d DCA 2006). In that case the jury was instructed that they could convict the defendant of conspiracy if it was proven that the defendant intended to commit the crime of murder and conspired to commit said murder with "Franki Lafontant and/or an unknown black male. . . ." Casimir, 932 So.2d at 474. The court found the use of "and/or" in this context was not fundamental error because the defendant "could not be found guilty of the crime unless he personally intended that the murder be committed and conspired with at least one other person to carry out that intent." Id. The same is true in the instant case. The instruction in this case clearly advised the jury that to find the Defendant guilty of conspiracy, the Defendant must have agreed with at least one of the listed co-defendants in the conspiracy charge. (Exhibits "D," page 921; "E.") Further, although the jury was given the instruction on principles, they were specifically instructed that this applied only to Count Three, the Trafficking charge, and not to Count One, the Conspiracy charge. (Exhibit "D," page 925.) As the jury was properly instructed in accordance with the standard jury instructions, trial counsel's failure to object is not ineffective and the Defendant's sixth ground is denied. Rodriguez, 919 So. 2d at 1272.

---

[19] See Ex. G at 921.

Ex. N at 163-66 (footnote omitted).   Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.   Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## G.  Ground Seven

Petitioner alleges that trial counsel was ineffective for failing to object to the testimony of a State witness identifying Petitioner's voice on an audiotape of a telephone call. Amended Petition at 28-31.  Petitioner raised this ineffectiveness claim in state court in his 3.850 motion, and the circuit court adjudicated this claim as follows:

> In his seventh ground, the Defendant alleges that counsel was ineffective by failing to object to the identification by Special Agent Troy Clausen of the Defendant's voice in two taped phone conversations.  Agent Clausen testified regarding two taped phone calls, which he testified took place on March 4 and March 8, 2006 between the Defendant and Antonio Garcia.  (Exhibit "D," pages 724-743.)  He further testified that the content of the phone calls consisted of the Defendant and Mr. Garcia discussing Mr. Garcia's ability to supply the Defendant with large quantities of drugs he could sell.  (Exhibit "D," pages 733-735, 740-743.)  The Defendant denies that he participated in these two calls and alleges that counsel should have objected to Agent Clausen's identification of him as a participant.
>
> At the time of the trial, Agent Clausen had previously spoken directly with the Defendant.  He interviewed the Defendant on May 26, 2007 following the Defendant's arrest.

(Exhibit "D," pages 773-777.)  Even if counsel had objected to Agent Clausen's identification of the Defendant, this objection would have been denied.  Testimony regarding voice identification is admissible to prove identity.  Barrientos v. State, 1 So.3d 1209, 1213 (Fla. 2d DCA 2009) (citing England v. State, 940 So.2d 389, 401 (Fla. 2006)).  The credibility of such evidence is a question for the jury Barrientos, 1 So.3d at 1213.  Counsel did attack the credibility of the voice identification on cross-examination of Agent Clausen, during which Agent Clausen did testify that the tapes were of poor quality, that the phone used for the call was not listed in the Defendant's name and was not recovered from the Defendant, and that no formal voice recognition was done.)  (Exhibit "D," pages 780-786.)  In addition, the Defendant testified at trial that it was not his voice on these calls.  (Exhibit "D," pages 808-809.)  On a claim of ineffective assistance of counsel, the standard is "reasonably effective counsel, not perfect or error-free counsel."  Coleman v. State, 718 So.2d 827, 829 (Fla. 4th DCA 1998) (citing Jennings v. State, 583 So.2d 316, 321 (Fla. 1991) and Waterhouse v. State, 522 So.2d 341 (Fla. 1988)).  In evaluating whether counsel's performance falls outside of the range of reasonable professional assistance, courts are required to "(a) make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment with the burden on claimant to show otherwise."  Id. at 829-830.  This Court concludes that counsel's performance regarding the credibility of the voice identification was within the range of reasonable professional assistance.

Further, this Court notes that Agent Clausen also testified that during his interview with the Defendant following his arrest, the Defendant admitted his involvement in the drug transactions, admitted that he did the drug deals for money, and admitted that he spoke with Mr. Garcia regarding drug transactions. (Exhibit "D," pages 773-774.)  He also testified that there were thousands of drugs calls in this investigation and that the Defendant was an active participant in the calls. (Exhibit "D" pages 774-775.)  In addition, the Defendant admitted during his testimony that he had participated in the drug deals. (Exhibit "D," pages 822-823, 826-828.)  He also admitted that it was him

21

> on the phone for all of the phone calls presented at trial other than the March 4 and March 8, 2006 calls.  (Exhibit "D," pages 828-830.)
>
> Based on all of the above, this Court finds that the Defendant has failed to establish that counsel was ineffective and has failed to establish prejudice.  Strickland, 466 U.S. at 687.  Accordingly, ground seven is denied.

Ex. N at 166-68 (footnote omitted).  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## H.  Ground Eight

Petitioner alleges that the cumulative effect of trial counsel's errors, as set forth in grounds one and three through seven, denied Petitioner effective assistance of counsel. Amended Petition at 32-33.  Petitioner raised this ineffectiveness claim in state court in his 3.850 motion, and the circuit court adjudicated this claim as follows:

> In the Defendant's eighth ground, he argues that the cumulative effect of the errors allegedly committed in his case constitute fundamental error.  The Defendant has raised a total of seven prior claims alleging error, all of which have been denied by this Court.  Consequently, this Court rejects the Defendant's cumulative error argument.  See Mansfield v. State, 911 So.2d 1160, 1168 n.6 (Fla. 2005) (citing Griffin v. State, 866 So.2d 1, 22 (Fla. 2003), cert. denied, 543 U.S. 962 (2004)).

22

Ex. N at 168.  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. R.

Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law,[20] and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on this claim.

## I.  Ground Nine

Petitioner alleges that he is unlawfully detained under a void commitment order.  Specifically, he argues that the OSP filed an information that was so defective that it did not allege any county, other than Duval County, was affected by the conspiracy.  Therefore, the sentencing court "was deprived of jurisdiction and the detention Order issued by the same is void and a nullity."  Amended Petition at 37.

Petitioner raised this claim in state habeas petition filed in the circuit court in Liberty County, Florida.  The circuit court found that, to the extent Petitioner was challenging his

_____

[20]  The Eleventh Circuit has rejected similar cumulative error arguments, noting that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564 (11th Cir. 2009) (per curiam).  "However, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'"  Id. at 564-65 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).

Duval county conviction, the court lacked jurisdiction to address the petition as a post-conviction motion.  Ex. T at 42.  The court also found that Petitioner's claim should have been raised on direct appeal or in his prior 3.850 motion and that "[a] petition for extraordinary relief cannot be used to litigate issues which could have been raised on direct appeal or in prior postconviction proceedings."  Id. at 42-43 (citations omitted).  Upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Ex. X.  Accordingly, it appears that this claim is procedurally barred.  However, Respondents do not assert this procedural bar; therefore, the Court will not impose it sua sponte.

Nevertheless, Respondents contend, and this Court agrees, that this claim is without merit.  See Response at 5-9, 19; Carbajal v. State, 75 So.3d 258, 261-62 (Fla. 2011) (finding that any lack of jurisdiction on part of the OSP to prosecute the defendant, on the basis that all drug felonies alleged and all actions pertinent to those crimes purportedly occurred in the same county and judicial circuit, did not divest the circuit court of jurisdiction over the felony offense); Cortes v. Gladish, No. 6:05-cv-271-Orl-31GJK, 2008 WL 728382, at *4 (M.D. Fla. Mar. 17, 2008) (finding the evidence was sufficient to support the state court's findings that the OSP had jurisdiction to prosecute a conspiracy to traffic in heroin charge where the petitioner formed the intent to sell heroin in Volusia County and then he and one of his co-defendants traveled from Volusia County "to the location for the drug drop-off in Orlando in Orange County").  Thus, Petitioner is not entitled to relief on this claim.

24

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. #23) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of the Court** shall enter judgment accordingly.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability.[21] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.      The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of August, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

ps 7/31
c:
Carlos Bodoy
Counsel of Record

---

[21] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, a certificate of appealability is not warranted.